### SOUTHAVEN KAWASAKI– YAMAHA Plaintiff

v.

### YAMAHA MOTOR CORPORATION, USA and Olive Branch Suzuki Defendants

Civil Action No. 3:00CV563LN.

United States District Court,
S.D. Mississippi,
Jackson Division.

Nov. 17, 2000.

**976**

Oscar Clark Carr, III, Memphis, TN, for Plaintiff.

Robert M. Frey, R. Andrew Taggart, Jr., Kari L. Foster, Jackson, MI, for Defendant.

## MEMORANDUM OPINION AND ORDER

TOM S. LEE, District Judge.

This cause is before the court on the motion of plaintiff Southaven Kawasaki–Yamaha to remand this case to the Mississippi Motor Vehicle Commission (MMVC) from which it was removed by defendants Yamaha Motor Corporation, USA (Yamaha) and Olive Branch Suzuki. Defendants have responded in opposition to the motion and the court, having considered the memoranda of authorities, together with attachments, submitted by the parties, concludes that the motion is well taken and should be granted.

Southaven Kawasaki–Yamaha (Southaven) is a motorcycle dealership located in Southaven, Mississippi that sells Yamaha motorcycles and other Yamaha products. The record reflects that in March 2000, Southaven, along with several other Yamaha dealers in the Southaven vicinity, after fruitless communications with Yamaha's local representative, began complaining to Yamaha's home office that the company was not meeting their needs, and complaining primarily that Yamaha had consistently failed to supply them with sufficient quantities of certain models of Yamaha products to meet consumer demand. Yamaha responded, but Southaven viewed Yamaha's response as indicative of a complete unwillingness to work toward resolving the dealers' complaints. To make matters worse between Southaven and Yamaha, in June 2000, Yamaha, over the objections of Southaven and other dealers in the market, licensed a new dealership, Olive Branch Suzuki, which is located a mere few miles from Southaven. Thus, on June 9, 2000, Southaven filed a "formal complaint" with the Mississippi Motor Vehicle Commission (MMVC or Commission),[1] detailing its grievances with Yamaha. In response, the Commission on July 7, 2000 issued to Yamaha and Olive Branch Suzuki a notice of hearing and order to show cause directing them to show cause "why penalties should not be imposed" for the following alleged violations:

[Miss.Code Ann. § ] 63–17–73(a)

For a Manufacturer . . .

1. To order or accept delivery of any motor vehicle or vehicles, appliances, equipment, parts or accessories therefor, or any other commodity or commodities which shall not have been voluntary [sic] ordered said motor vehicle dealer.

[Miss.Code Ann. § ] 63–17–73(d)

---

1. The court notes that prior to filing its formal complaint with the MMVC, Southaven had advised the MMVC of its communications with Yamaha, that it would oppose Yamaha's licensing of any new dealers in the market and that if it was not able to resolve its complaints through informal negotiations with Yamaha, it would file a formal complaint with the Commission.

For a manufacturer . . .

1. To refuse to deliver in reasonable quantities and within a reasonable time after receipt of dealer's order to any duly licensed motor vehicle dealer having a franchise or contractual arrangement for the retail sale of new motor vehicles sold or distributed by such manufacturer.

At the request of Southaven, the MMVC thereafter amended the notice to "delete the Alleged Violation of 63–17–73(c)(1) [and to] [a]dd 63–17–53(2) [which establishes as a purpose of the Commission the avoidance of] undue control of the independent Motor Vehicle Dealer by Motor Vehicle Manufacturing and Distributing organizations."

Yamaha filed a notice of removal on August 1, 2000, asserting that the MMVC is a "State court" for purposes of removal; that the case initiated by Southaven's complaint to the MMVC constituted a "civil action" between Southaven and Yamaha; that Southaven and Yamaha, parties of diverse citizenship, are the only true parties to the "civil action" as Olive Branch

Suzuki was fraudulently joined; and that the amount in controversy exceeds $75,000, so that there is diversity jurisdiction under 28 U.S.C. § 1332. Southaven has now moved to remand, contending, *inter alia*, that there can be no diversity jurisdiction over the case since the amount in controversy is not more than $75,000 and since Olive Branch Suzuki was not fraudulently joined. Its most forceful, and most convincing argument, though, is that the MMVC is not a "State court" from which the case could have properly been removed. Indeed, it is for this reason that the court finds that the case should be remanded.[2]

The federal removal statute permits removal of "any civil action brought in a State court of which the district courts of the United States have original jurisdiction." 28 U.S.C. § 1441(a). The determinative issue on the present motion is whether the MMVC is a "State court" from which a case may be removed. While some courts have held that § 1441(a) does not permit removal of ad-

**2.** It is probably too much to say that Southaven fraudulently joined Olive Branch as a defendant in order to destroy diversity. In filing its complaint with the MMVC, Southaven did not identify Olive Branch Suzuki as a party or "defendant" as such, but rather Southaven merely set out, in letter form, its claim that Yamaha was not living up to the obligations imposed on it by law as a licensed vehicle dealer in Mississippi. The complaint included as a topic of controversy Yamaha's licensing of Olive Branch Suzuki; but Southaven did not assert that it had been wronged by any act or omission by Olive Branch Suzuki, or that Olive Branch Suzuki has violated any law or regulation. Nor, for that matter, did Southaven assert any claim for relief against Olive Branch Suzuki. Thus, even though Southaven may not have joined Olive Branch Suzuki with an eye toward destroying diversity jurisdiction, still, in the vernacular of fraudulent joinder, it can be said with assurance that Southaven has no possibility of establishing a claim against Olive Branch Suzuki and that the citizenship of Olive Branch Suzuki would be disregarded in assessing diversity jurisdiction if the MMVC were a tribunal from which the case could have been removed.

The court is not necessarily persuaded that the amount in controversy is greater than $75,000. It is within the Commission's power to suspend or revoke the license of a dealer who is found to have violated the Mississippi Motor Vehicle Act, which, if done, could result in losses to Yamaha of more than $75,000; but Southaven did not ask that Yamaha's license be suspended or revoked, and in fact likely would not have requested such relief, since that would have been detrimental not only to Yamaha but also to Southaven's business. In lieu of suspension or revocation, the Commission is authorized to impose a penalty of not more than $10,000—an amount significantly less than the $75,000 threshold for federal diversity jurisdiction. And while it is true that Yamaha has asserted a counterclaim against Southaven for abuse of process, the court is not persuaded that it is a compulsory counterclaim which would factor into the amount in controversy determination. The court, however, will not undertake to definitively resolve any of these questions, for its conclusion that the case should be remanded can be made without reference to these issues.

ministrative agency proceedings regardless of whether the agency might be the functional equivalent of a court, *see Nassau County v. Cost of Living Council*, 499 F.2d 1340 (Em.App.1974) (removal statute contemplates removal from court proceedings, not "interruption of administrative proceedings"); *California Packing Corp. v. I.L.W.U. Local 142*, 253 F.Supp. 597, 598–99 (D.Haw.1966) (removal statute speaks to removal only from courts, not administrative agencies), most courts addressing the question have held that there "are certain restrictive instances in which a state administrative agency may constitute a state court for removal purposes." *Ford Motor Co. v. McCullion*, Nos. C2–88–142, C2–87–1459, 1989 WL 267215 (S.D.Ohio April 14, 1989). As expressed by the court in *McCullion*,

> The general rule is that state administrative proceedings are not state courts for purposes of removal. The complex and increasingly numerous legislative delegations to state administrative agencies and the accompanying regulations, often have the practical effect of being primarily adjudicative in nature. Though these "quasi-judicial" regulatory bodies are legislatively sanctioned, they exclusively serve state interests. These agencies are the means by which the state handles matters inherently germane to state ends. However, under certain circumstances, administrative agencies are "state courts" for purposes of removal.

*Id.* at *2 (citations omitted). Accepting that this is so, then, the question then becomes how to determine whether a particular administrative agency may be counted as a state court for removal purposes in a particular situation. The approach the majority of courts have taken to assess the propriety of removal from an administrative agency is to evaluate whether the administrative agency at issue functions as a state court, i.e., whether its functions, powers and procedures are those of a state tribunal, *see, e.g., Floeter v. C.W. Transport, Inc.*, 597 F.2d 1100 (7th Cir.1979); *Volkswagen de Puerto Rico, Inc. v. Puerto Rico Labor Relations Bd.*, 454 F.2d 38 (1st Cir.1972); *Kolibash v. Committee on Legal Ethics*, 872 F.2d 571 (4th Cir.1989); *Tool & Die Makers Lodge No. 78 Int'l Ass'n of Machinists v. General Electric Co. X–Ray Dep't*, 170 F.Supp. 945 (E.D.Wis.1959)[3]; *see also* Charles A. Wright, Arthur R. Miller and Edward H. Cooper, *Federal Practice and Procedure* § 3271 (2d ed.1998) (stating that "[a]ll state tribunals exercising judicial functions certainly fall within the [removal] statute," but noting further that "federal courts have been reluctant to predicate removal on the theory that administrative proceedings functionally are equivalent to judicial proceedings"); and even if the agency is functionally like a court, most courts ask the further question whether "the respective state interests in litigating the matter as a whole are subordinate to any unique federal interest, in light of the subject

---

3. The origin of the "functional test" is traced to the Supreme Court's opinion in *Upshur County v. Rich*, 135 U.S. 467, 10 S.Ct. 651, 34 L.Ed. 196 (1890), where it held that notwithstanding a state's characterization of a body as a "court," that body may not, in fact, be a court for removal purposes. In *Tool and Die Makers*, the court reasoned from *Upshur County* that the converse is also true, that a state's failure to characterize as a court a board or agency that is functionally a court, will not prevent removal. The court in *Sun Buick, Inc. v. Saab Cars USA, Inc.*, 26 F.3d 1259 (3d Cir.1994), was critical of the *Tool and Die Makers* court's reasoning, finding "questionable" the conclusion that a case can be removed from an administrative agency to federal court on the ground that the administrative agency is functionally a court, *Sun Buick*, 26 F.3d at 1263, and noting that "[i]t does not follow that because *Upshur County* held that a court is not necessarily a 'court' for removal purposes, the Supreme Court has endorsed the view that an administrative agency might be a 'court' for removal purposes," *id.* The *Sun Buick* court did not ultimately find it necessary to decide whether to adopt or reject the "functional test," for it concluded, as does this court, that the board there at issue would not be considered a court in any event.

matter and in provision of a forum." *McCullion*, 1989 WL 267215, at *2 (citing *Floeter*, 597 F.2d at 1102); *Volkswagen de Puerto Rico*, 454 F.2d at 44. These courts recognize, though, that only in the "rare situation" will an administrative agency be considered a state court for removal purposes. *See McCullion*, 1989 WL 267215, at *2; *DeLallo v. Teamsters Local Union # 776*, No. Civ. A. 94–3875, 1994 WL 423873, at *3 (E.D.Pa. Aug.12, 1994) (concluding that Third Circuit would reject "functional test" but noting that "if a state administrative agency would ever be considered to be a 'state court' it would only be in an 'exceptional case' ").

Like the majority of courts, this court tends toward the view that there can be rare instances in which a state administrative agency is properly considered a "state court" for purposes of removal. Further, the court will assume for the sake of argument that the way to identify such circumstance is by resort to the "functional test"—or at least that version of the test which takes into account the respective state and federal interests in resolution of a given dispute.[4] And by reference to that test, the court concludes that this case must be remanded, for while the MMVC functions in certain respects like a court, it is by no means the functional equivalent of a court, and particularly not so with respect to the complaint initiated by Southaven.

In this regard, the Mississippi Motor Vehicle Commission was established by the state legislature to regulate and license motor vehicle manufacturers, distributors, dealers and salesmen doing business in Mississippi.[5] Under the Rules of Practice and Organization of the MMVC, the Commission, in addition to its authority to "issue, amend and rescind such reasonable rules and regulations as may be necessary to carry out the provisions of the Mississippi Motor Vehicle Commission Law," is authorized to "deny an application for a license, or revoke or suspend a license after it has been granted," or to assess a civil penalty in lieu of suspension or revocation, for any of a number of reasons, including a dealer's "[w]illful failure to comply with any provision of the Motor Vehicle Commission Law or any rule or regulation adopted by the Commission." The Act mandates that the Board not deny an application for a license, or revoke or suspend a license already granted without first giving the applicant or licensee a hearing or opportunity to be heard. The Act empowers the Commission to call a hearing, either on its own motion or at the behest of "any interested party" who files a sworn complaint, for the purpose of "taking action in respect to any matter within the Commission's jurisdiction." Any such

---

4. The court notes that the parties have identified and the court has found no Fifth Circuit case addressing the propriety of removal from state administrative agencies.

5. The purpose and function of the Commission is set forth in Miss.Code Ann. § 63–17–53, which states,

The legislature finds and declares that the distribution and sales of motor vehicles in the State of Mississippi vitally affects the general economy of the state and the public interest and the public welfare. The legislature further finds and declares that it is necessary, in the exercise of its police power, to regulate and to license motor vehicle manufacturers, factory branches and divisions, distributors, distributor branches and divisions, distributor representatives, wholesalers, wholesaler branches and divisions, dealers and salesmen doing business in the State of Mississippi in order (1) to prevent frauds, unfair practices, discrimination, impositions and other abuses upon the citizens of the State of Mississippi, (2) to avoid undue control of the independent motor vehicle dealer by motor vehicle manufacturing and distributing organizations, (3) to foster and keep alive vigorous and healthy competition, (4) to prevent the creation or perpetuation of monopolies, (5) to prevent the practice of requiring the buying of special features, accessories, special models, appliances and equipment not desired by a motor vehicle dealer or the ultimate purchaser, (6) to prevent false and misleading advertising, (7) to promote and keep alive a sound system of distribution of motor vehicles to the public, and (8) to promote the public safety and welfare.

hearing must be preceded by at least seven days' prior written notice "to all parties whose rights may be affected" by the hearing, and such parties have "the right to appear personally and by counsel, to cross-examine witnesses appearing against them and to present witnesses and evidence in their own behalf." The Commission may cause witness subpoenas to be issued, and witnesses so summoned are entitled to receive the same witness fee and mileage allowance as witnesses in the circuit court. A record of the hearing must be made and kept. The order of proof is the same as that of a court, and includes the opportunity for opening statements, followed by direct and cross-examination of witnesses for the Commission or complainant (as that is the party with the burden of proof), direct and cross-examination of the charged party's presentation of rebuttal evidence and closing statements. The hearings are "informal" and the "technical rules of evidence . . . relaxed."

The rules mandate that the Commission make a final decision within thirty days of the hearing. That decision is to be incorporated into an order of the Commission which is appealable by any aggrieved party to an appropriate chancery court. The Commission may apply to the chancery court for enforcement of its order by injunction.

Citing to these rules for the conduct of hearings before the Commission, Yamaha submits that the MMVC is a "State court" under the "functional test" primarily based on the adjudicatory format the Commission follows in addressing complaints filed with the Board and the fact that the Commission is authorized to impose punishment. The court, however, is wholly unpersuaded that these alleged judicial functions are sufficient to warrant the conclusion urged by Yamaha. That is,

while the Commission may perform certain adjudicatory functions, those functions are limited and do not transform this legislative/regulatory body into a court.

In this regard, the court would first note that while a party may file a complaint with the Commission for an alleged violation of the Mississippi Motor Vehicle Commission Law, the Act does not provide the respondent a right to file an answer; and there is no provision for discovery. Moreover, while the Commission has the power to issue subpoenas, no provision is made for the punishment of a witness who fails to appear in response to a subpoena. Thus, while the Commission procedures have certain attributes of a court, it lacks others.

More significant, however, is the fact that the Commission's adjudicatory and enforcement powers are limited in that its authority extends only to enforcement of the statute under which it was created; and there is nothing in the statute or rules of the MMVC to suggest that it has authority to impose any punishment other than that specifically prescribed by the rules, i.e., license revocation or suspension or imposition of a civil penalty (which is payable to the state treasury). The Commission has no authority to adjudicate contract disputes between parties, nor any authority to award money damages. Indeed, the Act provides plainly that a party seeking damages for the willful violation of any provision of the Mississippi Motor Vehicle Commission Law must bring suit "in any court of competent jurisdiction." Given these manifest limitations on the Commission's authority, the fact that proceedings before the Commission are conducted in a manner similar to court proceedings cannot reasonably justify characterization of the Commission as a "state court" for removal purposes.[6]

**6.** Reaching this same conclusion, the court in *Sun Buick, Inc. v. Saab Cars USA, Inc.,* 26 F.3d 1259 (3d Cir.1994), observed that the Pennsylvania Board of Motor Vehicles, "[r]ather than possessing the powers of a

court. . . administers and enforces the Board of Vehicles Act." *Sun Buick,* 26 F.3d at 1264. It regulates the licensing of salespersons, dealers, brokers and manufacturers. It passes on qualifications for licensure, inves-

This case is also distinguishable from those which have permitted removal from administrative agencies based on the nature of the controversy between the parties. For example, in *Corwin Jeep Sales & Service, Inc. v. American Motors Sales Corp.*, 670 F.Supp. 591, 594 (M.D.Pa.1986), one of the principal cases upon which defendants rely, the court denied a motion to remand in a case that concerned a dispute between private parties over the allegedly wrongful termination of the automobile franchise agreement into which they had entered. The court observed that "[t]he resolution of such disputes, which will involve interpretation of the agreement itself and the applicable law, is an endeavor which courts commonly undertake," *id.*; *see also Floeter*, 597 F.2d 1100 (finding removal proper where action was one for breach of contract between private parties); *Volkswagen de Puerto Rico*, 454 F.2d at 44 (in affirming propriety of removal, finding "significant" the fact that "the gravamen of the complaint was the breach of an agreement between the parties" since "ordinarily courts have adjudicated breaches of contract").

In contrast, a request for remand was granted in a case involving a factual scenario substantially similar to that presented here, *Commonwealth of Pennsylvania, State Board of Vehicle Manufacturers, Dealers and Salespersons v. General Motors Corp.*, 758 F.Supp. 1046 (M.D.Pa. 1991). There, the court concluded that removal to federal court is not supported where the plaintiff has brought an action against a defendant purely on the grounds of a statutory violation under the state's motor vehicles act. *Id.* at 1049 n. 2. In that case, much like here, after a General Motors dealer filed a complaint with the State Board of Vehicle Manufacturers, Dealers and Salespersons alleging that one of GM's marketing initiatives required the dealer to contribute financially to an advertising campaign in violation of The Board of Vehicle's Act, the Board investigated the complaint and issued a Rule to Show Cause, directing that GM come forward and show cause why the Board should not take disciplinary action, as provided under the Pennsylvania Act. GM removed the action to federal court on the basis of diversity jurisdiction, following which the Board moved to remand. The court determined that the action should be remanded, reasoning that the federal court, because it had no authority with respect to the licensing of automobile dealers, would not have had original jurisdiction over the action. In this regard, the court stated,

It is irrefutable that General Motors, as a manufacturer of automobiles, cannot distribute automobiles in Pennsylvania without first acquiring a license from the Board, as required by Section 5(a) of the Act. It is also unquestioned that General Motors must comply with the limitations on manufacturer activities set forth in the Act and the regulations promulgated by the Board pursuant to its authority under the Act. Finally, it is irrefutable that the Board' is vested with the power to investigate its licensees, tigates allegations of wrongful acts, and brings criminal prosecutions for unauthorized practices.....

The Pennsylvania Board does not have [the power to accord relief equivalent to that available from a court] in that it cannot accord actual damages. Its powers of action to afford relief are circumscribed: it can only enjoin a franchise termination alleged to be in violation of section 818.9(c) or the addition or relocation of a new vehicle dealer that is in violation of section 818.18, and it can impose disciplinary sanctions.... `

We assume that the Pennsylvania legislature expressly provided that any person who may be injured by a violation of the Act may bring an action for damages, including punitive damages, or equitable relief including injunctive relief in any court of competent jurisdiction in recognition of the Board's inability to award damages or full injunctive relief.

*Id.* at 1264–65, 1266; *see also Volkswagen de Puerto Rico*, 454 F.2d at 44 (adjudicative format is suggestive of a court while lack of enforcement power supports contrary conclusion).

either unilaterally or at the behest of private complainants, and may dispense such disciplinary measures as fines and suspension of licenses....

Thus, the Rule issued against General Motors amounts to a summons to a licensee to come before the Board so that the Board can continue its investigation into the complaint against the licensee. The court has no parallel authority to issue licenses, investigate, or summon an automobile manufacturer before it to answer questions about its activities within the Commonwealth.

Thus, even without applying the functional test, the court finds that it must grant the petition to remand.

*Id.* at 1048. *See* 28 U.S.C. § 1441 (providing for removal from state court of any civil action over which the district courts have original jurisdiction). The court went on to observe, though, that given the nature of the dispute, and in particular, the fact that it involved an alleged violation of the state's Board of Vehicles Act and did not involve any kind of contract dispute between the parties, the Board, in addressing the dealer complaint against GM, was functioning in its regulatory and administrative capacity rather than as a court. *Id.*

Likewise, in the case at bar, the only issue before the MMVC is Yamaha's alleged violation of certain provisions of Mississippi's Motor Vehicle Commission Law. Accordingly, even if there might be instances in which the MMVC might be deemed a "state court" (though in the court's view, there would no such instances), this is not one of them.

Finally, the court would note that here, as in *Commonwealth of Pennsylvania, State Board of Vehicle Manufacturers, Dealers and Salespersons v. General Motors Corp.,* 758 F.Supp. at 1048–49, it cannot say that in these circumstances, it has "an equal or greater interest [than the Board] in asserting disciplinary authority vested in the Board over automobile manufacturers and distributors."; *cf. Corwin,*

670 F.Supp. at 594–95 (state's interest in implementation of its regulatory mechanism was not at stake in contract dispute between parties since "Pennsylvania ha[d] no greater interest in this matter than it does in the resolution of any other private dispute between individuals").

Accordingly, for the foregoing reasons, the court concludes that Southaven's motion to remand should be granted.